IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

PORSHA R. THOMPSON                                                                                           PLAINTIFF

v.                                          NO. 4:22-cv-1223 JM

AUTISM IN MOTIONS CLINICS, LLC                                                              DEFENDANT

ORDER

This is an employment discrimination and retaliation case. Pending is Defendant's motion for summary judgment (Doc. No. 14). Plaintiff filed a response to which AIM replied. (Doc. Nos. 18, 24). For the reasons stated below, the motion is granted.

Factual Background

Porsha Thompson, who is black, brings claims of race and disability discrimination as well as retaliation related her termination from Autism in Motion Clinics, LLC (AIM). Essentially, her claim is that her white co-workers were given preferential client assignments as an accommodation while she was not. AIM filed a motion for summary judgment along with a statement of undisputed material facts in support. (Doc. No. 15). Each of the seventy-two statements was supported by a citation to either Thompson's deposition testimony or the declaration of AIM's former vice president of human resources, Danielle Spieckerman. (Doc. Nos.16-1 and -2). Thompson did not respond to these statements, and they are deemed admitted pursuant Local Rule 56.1(c) of the United States District Court for the Eastern and Western Districts of Arkansas. The following facts are taken from AIM's statement of facts.

AIM provides applied behavior analysis therapy for children with autism. This therapy includes the goals of reducing the client's aggression. All technicians received safety care training for managing clients with aggressive and challenging behavior. In August 2019, AIM

hired Thompson as a behavioral technician. This job required her to work one-on-one with AIM's clients. Behavior technicians worked under the direct supervision of board certified behavior analysts (BCBA) who conducted initial client evaluations and prepared client assessments and individual treatment plans.

In November of 2020, Thompson was promoted to an in-between position as a clinical specialist on a path to becoming a BCBA. The job description for clinical specialists also required working one-on-one with clients, but this direct time was reduced to allow for indirect time, such as getting additional supervision from existing BCBAs to obtain the field work experience required to become a BCBA. All AIM employees who provided hands-on treatment "must be prepared for a wide range of behaviors in their daily interactions with clients" including aggressive behavior. (Doc. No. 15, ¶¶ 9-10).

On February 3, 2021, Thompson provided AIM a note from her chiropractor stating that she was undergoing treatment for back pain and would need to attend ongoing appointments for treatment. AIM accommodated this request. On February 25, 2021, Thompson requested leave pursuant to the Family Medical Leave Act (FMLA), 29 U.S.C. §2601, *et seq,* with a note from her doctor stating she needed to remain out of work until March 1, 2021. This request was granted.

On March 12, 2021, Thompson submitted an updated doctor's note requesting an additional four weeks of FMLA leave, which was granted. AIM gave Thompson a copy of FMLA paperwork and a job description showing her specific duties to give her doctor in the event she needed accommodations. Thompson returned to work on April 12 with restrictions on her return-to-work form of not working over 30 hours per week, or lifting, pushing, or pulling over 10 pounds.

On May 11, 2021 Thompson met with two AIM employees (Mariel Spicer and Emily Doak). Viewing the evidence most favorably to Thompson, they discussed how her working with aggressive clients would go against her work restrictions. (Doc. No. 16-1, p. 31).[1] Mariel said that Thompson should get a doctor's note that stated specifically that she could not work with aggressive clients. Mariel also wrote down a short list of clients that she considered non-aggressive. Thompson testified that they also discussed that she had more than enough hands-on direct hours for her BCBA accreditation and that she could perform the primarily desk-job indirect hours without violating her work restrictions.

On May 17, 2021, Thompson submitted another doctor's note stating she needed to remain off work until June 1, 2021. AIM human resources met with Thompson on May 19th and 25th to provide details about FMLA and the required paperwork. Working with non-aggressive clients was not discussed at these meetings. Thompson did not return to work on June 1st. Instead, she emailed that morning saying that she planned to submit additional paperwork to show that her new return date would be June 12.  AIM asked Thompson to submit updated FMLA paperwork by June 4, 2024.

Thompson testified that she was unable to get the doctor's office to complete the paperwork.  On the morning of June 13, 2021, AIM advised Thompson that if she did not return the paperwork that day she would be out of compliance with its attendance and leave policies. Later that day AIM sent Thompson an email that as of the next day, her time off would not be covered under FMLA. On June 15, 2021, Thompson provided FMLA paperwork and a return-to-work form stating that she needed to be off work (retroactively) between May 17, 2021 and June

---

[1] While AIM includes this testimony in its statement of facts, it adds that there is no written record of this discussion or agreement.

14, 2021, but that she could return on June 15, 2021. The return-to-work form did not include any restrictions. Thompson did not return to work on June 15th.

AIM and Thompson continued to exchange emails. Thompson said she was going to change doctors, and AIM sought an update for when Thompson would provide updated paperwork. Thompson eventually said she would follow up with her doctor on June 24, 2021. After not receiving any update or any request to use her remaining leave (either FMLA, PTO, or 5 days of unpaid time off), AIM told Thompson that she was in in violation of company time and attendance policies, and that her employment would end if she did not contact AIM by July 5, 2021. Thompson responded on July 2nd, stating she needed new copies of FMLA paperwork for her doctors and discussing the continued difficulty she was having getting medical testing done and paperwork completed. On July 6, 2021, Thompson emailed AIM a cropped image of a computer screen that stated "Not permitted to work with aggressive clients x 2.5 months." (Doc. No. 16-1, p. 91; Ex. 17 to Plaintiff's deposition). Subsequent communication included a more complete screen shot showing the name of a new doctor, Dr. Sokolow, as having written the limitation.

On July 14, 2021, AIM emailed Thompson that it would extend her employment until July 29, 2021 due to the trouble she was having getting what she needed from her doctor. She was also told that if she failed to provide the completed medical certification form by that date it would "result in the denial of your request for an accommodation or intermittent FMLA leave and warrant your separation of employment with AIM Clinics." (*Id.* at 92; Exhibit 18 to Plaintiff's deposition).

Thompson submitted the FMLA certification prepared by Dr. Sokolow on the July 29 deadline. By that time, however, she had exhausted all available FMLA leave time. Dr. Sokolow

stated that Thompson would be incapacitated from July 6, 2021 through October 1, 2021, and then she could return then as long as she did have to work with any aggressive clients. (*Id*. at 94-97, Pl. Dep. Ex. 19). On August 3, 2021, AIM contacted Thompson to let her know that after reviewing the paperwork and her attendance, she had more than exhausted her FMLA leave. (*Id*. at 100; Pl. Dep. Ex. 20 at 4). AIM further told Thompson it could no longer continue to provide her leave time, that it would not be possible to exempt her from working with aggressive clients as they all had the potential to become aggressive. (Doc. No. 16-2; Spieckerman Decl. at ¶ 26).

AIM asked Thompson if she had any ideas for alternative accommodations. Thompson responded by again referring to the discussions at the May 11, 2021 meeting and stating that she disagreed with AIM's determination that it could not accommodate her request to work only with non-aggressive clients. Plaintiff also testified that she requested to be allowed to work indirect hours rather than direct hours with clients. (Doc. No.16-1, p. 41) AIM reiterated its inability to accommodate her specific request and proposed Thompson search for other jobs within AIM that did not require working one-on-one with clients. Thompson looked on AIM's website for another job, but only saw postings for hands-on positions. The parties continued email communications but did not come to a resolution. AIM terminated Thompson's employment effective August 13 because she was unable to perform the essential functions of her position with or without a reasonable accommodation.

Thompson filed her Charge of Discrimination with the EEOC on October 5, 2021 alleging race and disability discrimination as well as retaliation for requesting a reasonable accommodation. (Doc. No. 16-1; Pl. Dep. Ex. 4). After receiving her notice of right to sue, Plaintiff filed this complaint seeking relief for race discrimination pursuant to the Title VII of the Civil Rights Act of 1964 and 42 U.S.C § 1981; and for failure to accommodate, discrimination,

and retaliation pursuant to the American with Disabilities Act (ADA) and the Arkansas Civil Rights Act (ACRA).[2]

## Summary Judgment Standard

Summary judgment is appropriate only when the evidence, when viewed in the light most favorable to the nonmoving party, shows that there is no genuine issue of material fact and that the defendant is entitled to entry of judgment as a matter of law. Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The initial burden is on the moving party to demonstrate the absence of a genuine issue of material fact. *Celotex*, at 323. The burden then shifts to the nonmoving party to establish that there is a genuine issue to be determined at trial. *Prudential Ins. Co. v. Hinkel*, 121 F.3d 364, 366 (8th Cir. 1997). Both of these burdens require the court to make a determination based on evidence that will be admissible at trial. *See Tuttle v. Lorillard Tobacco Co.*, 377 F.3d 917, 923–24 (8th Cir. 2004). "A party may not rely solely on inadmissible hearsay in opposing a motion for summary judgment, but instead must show that admissible evidence will be available at trial to establish a genuine issue of material fact." *Fin. Timing Publications, Inc. v. Compugraphic Corp.*, 893 F.2d 936, 942 (8th Cir. 1990).

## Race Discrimination

Thompson has offered no direct evidence of race discrimination. Under the familiar burden-shifting framework,[3] a plaintiff must first establish a prima facie case for race discrimination by showing that (1) she is a member of a protected class, (2) she met her employer's legitimate expectations, (3) she suffered an adverse employment action, and (4) the

---

[2] To the extent that Thompson might have intended to state a claim pursuant to the Age Discrimination in Employment Act (ADEA), she did not respond to AIM's failure-to-exhaust argument, and this claim is deemed abandoned.
[3] *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973).

6

circumstances give rise to an inference of discrimination. *Macklin v. FMC Transp., Inc.*, 815 F.3d 425, 427 (8th Cir. 2016). If Thompson meets her burden here, the burden will then shift to AIM to establish a legitimate, nondiscriminatory reason for her termination.  If established, the burden then shifts back to Thompson to establish that AIM's proffered explanation is pretextual. *Anderson v. Durham D & M, L.L.C.*, 606 F.3d 513, 520 (8th Cir. 2010). The same analysis applies to claims of discrimination under Title VII, 42 U.S.C. § 1981, and the ACRA. *Davis v. KARK–TV, Inc.,* 421 F.3d 699, 703–04 (8th Cir.2005).

      The first and second elements of a prima facie claim for discrimination are not disputed; Thompson is black, and she was terminated. As to the third element, that Thompson was meeting her employer's expectations, AIM's stated reason for terminating Thompson was that she could not perform the essential functions of her job with or without reasonable accommodation. However, AIM does not directly address the third element in its challenge of Thompson's prima facie case. Instead, AIM focuses on the fourth element, the lack of evidence giving rise to an inference of discrimination. "A plaintiff can establish an inference of discrimination in multiple ways, such as by showing more favorable treatment of similarly situated employees who are not in the protected class, biased comments by a decisionmaker, or that the employer failed to follow its own policies or shifted its explanation of the employment decision." *Mayorga v. Marsden Bldg. Maint. LLC*, 55 F.4th 1155, 1162 (8th Cir. 2022) (citation omitted). Here Thompson alleges that she was treated differently than her similarly situated white coworkers with medical issues who received the accommodation of not having to work with aggressive clients.

      In its brief, AIM challenges Thompson's choice of the five comparators she named in her deposition testimony. As to each, Thompson offered no evidence of what medical condition or disability the employee might have had, other than one of them might have had "some type of

concussion and a hand injury or something." (Doc. No. 16-1, p. 23). Nor did she know specifically how AIM accommodated these employees or for how long. In her eight-page response, the only comparator mentioned by Thompson is co-worker named Allison Beasley "who is white, was pregnant and also had medical restrictions." (Doc. 18-2, p. 3). Thompson also states that both her and Beasley's medical restrictions "were no direct treatment with AIM's aggressive cases." (*Id.*) Thompson did not offer evidence to support her claims, and she did not discuss any other comparators. There are no citations to any of the 178 pages of exhibits attached in support of her response, or to the record submitted by AIM.

Turning to the exhibits Thompson submitted with response, Exhibit 1 is the unsworn statement of a former AIM employee, Tiffany Simpson. Attached is a two-page document purporting to be a list of race-based grievances that Simpson submitted to AIM on October 5, 2021, after Thompson had been terminated. This unsworn statement is not properly before the Court and will not be considered. *See Banks v. Deere*, 829 F.3d 661, 667 (8th Cir. 2016); *Zubrod v. Hoch*, 907 F.3d 568, 574 (8th Cir. 2018). Furthermore, the discovery deadline was June 14, 2024. (Doc. No. 14). Simpson was not listed as a witness in Thompson's required initial disclosures. Thompson also references an additional witness that has agreed to testify about racial bias. And she mentioned the need to take the deposition of AIM director Mariel Spicer. Again, the discovery deadline was closed prior to the motion for summary judgment being filed. At no time did Plaintiff submit an affidavit specifying reasons that she could not present facts essential to justify her opposition as required by Rule 56(d) of the Federal Rules of Civil Procedure.

The Eighth Circuit has adopted a "low threshold" for establishing that other employees are similarly situated at the prima facie stage." *Wimbley v. Cashion*, 588 F.3d 959, 962 (8th Cir.

2009). Even so, the Court finds that Plaintiff has failed present evidence sufficient to establish an inference of race discrimination, and AIM is entitled to summary judgment on this claim. However, even if Thompson had established a prima facia case, the Court finds that AIM has met its "non onerous" burden of providing a legitimate, non-discriminatory reason for not allowing the accommodation she requested and terminating her employment. *Henry v. Hobbs*, 824 F.3d 735, 739 (8th Cir. 2016) (citing *Bone v. G4S Youth Servs., LLC*, 686 F.3d 948, 954 (8th Cir. 2012)). Danielle Spieckerman explained that there was no way to ensure that Thompson did not work with aggressive clients and explained the company's need to provide continuity of care for clients not interrupted by abrupt changes in the client's treatment team. Plaintiff concedes that as part of her job she was required to deal with aggressive and non-aggressive clients. (Doc. 18-1, p.4).

    The ultimate burden shifts back to Plaintiff to establish that this proffered reason was "mere pretext for intentional discrimination." *Torgerson v. City of Rochester*, 643 F.3d 1031, 1046 (8th Cir. 2011). This burden can be satisfied with evidence "that the employer treated similarly-situated employees in a disparate manner." *Beasley v. Warren Unilube, Inc.*, 933 F.3d 932, 938 (8th Cir. 2019). At this stage in the McDonnell Douglas framework, "the test for whether someone is sufficiently similarly situated, as to be of use for comparison, is rigorous." *Johnson v. Securitas Sec. Servs. USA, Inc.*, 769 F.3d 605, 613 (8th Cir. 2014). The plaintiff must establish "that he and the employees outside of his protected group were similarly situated in all relevant respects." *Id.* (cleaned up). This means that the plaintiff and the potential comparators must have "dealt with the same supervisor, have been subject to the same standards, and engaged in the same conduct without any mitigating or distinguishing circumstances." *Id.* (citation omitted).

9

Thompson did not offer evidence to meet her ultimate burden. The only comparator she mentions in her response is a white co-worker who was pregnant. She does not offer any details of this co-worker or those discussed by AIM as related to their medical conditions or disabilities, the scope and length of any alleged accommodations, or any paperwork the co-workers might have submitted in order to receive the accommodations Thompson says they were given. She has failed to come forward with proof admissible at trial that the real reason for her termination was race discrimination.

Disability Discrimination

To establish a prima facie case of disability discrimination pursuant to the ADA or the ACRA,[4] Thompson must establish that she (1) has a disability, (2) is a "qualified individual" under the ADA, and (3) that she suffered an adverse employment action as a result of her disability. *Denson v. Steak 'n Shake, Inc.*, 910 F.3d 368, 370 (8th Cir. 2018).

AIM challenges that Thompson can satisfy the second prong. To be considered a qualified individual under the ADA, an employee must (1) possess the requisite skill, education, experience, and training for her position, and (2) be able to perform the essential job functions, with or without reasonable accommodation.: *Goosen v. Minnesota Dep't of Transportation*, 105 F.4th 1034, 1040 (8th Cir. 2024) (cleaned up). AIM has introduced evidence an essential function of Plaintiff's job included direct time with its autistic clients, and Thompson has admitted that as part of her job she "was required to work with aggressive and non-aggressive clients." (Doc. 18-1, p. 4). She wanted to be let out of this requirement and be allowed to perform only indirect hours, or hours not working one-on-one with clients.

---

[4] "ACRA claims are analyzed under the same principles as ADA claims." *Moses v. Dassault Falcon Jet-Wilmington Corp.*, 894 F. 3d 911, 921 n.6. (8th Cir. 2018) (quoting *Alexander v. E. Tank Servs., Inc.*, 2016 Ark. App. 544, at 10, 505 S.W.3d 239, 245)).

It is Plaintiff's responsibility to "make a facial showing that reasonable accommodation is possible and that the accommodation will allow her to perform the essential functions of the job." *Lipp v. Cargill Meat Sols. Corp.*, 911 F.3d 537, 546 (8th Cir. 2018) (quoting *Burchett v. Target Corp.*, 340 F.3d 510, 517 (8th Cir. 2003)). "An accommodation is not reasonable if it requires an employer to "reallocate or eliminate the essential functions of a job." *Higgins v. Union Pac. R.R. Co.*, 931 F.3d 664, 671 (8th Cir. 2019) (quoting *Faulkner v. Douglas Cty. Neb.*, 906 F.3d 728, 733 (8th Cir. 2018). An employer "is not required to reassign existing workers to assist [the employee] in his essential duties." *Knutson v. Schwan's Home Serv., Inc.*, 711 F.3d 911, 916 (8th Cir. 2013). Thompson argued that she should have been assigned to work with non-aggressive clients, which AIM established it could not guarantee,[5] or that she should only be given indirect hours. She did not come forward with evidence that AIM could reasonably accommodate this request to excuse her from this essential duty of her job, and the Court finds that AIM is entitled to summary judgment on both Thompson's claims of disability discrimination and failure to accommodate.

Retaliation

To establish a prima facie case of retaliation under the ADA requires the plaintiff to show that she engaged in an activity protected by the ADA, that she suffered an adverse employment action; and that there exists a "but-for" causal connection between the two. *Moses v. Dassault Falcon Jet-Wilmington Corp*, 894 F.3d 911, 924 (8th Cir. 2018) (quoting *Oehmke v. Medtronic, Inc.*, 844 F.3d 748, 758 (8th Cir. 2016). As discussed above, AIM could legitimately terminate Thompson's employment for being unable to perform an essential function of her job. Therefore, she cannot make the "but-for" causal connection required to establish a prima facie

---

[5] Doc. 16-2, ¶ 26.

case for retaliation. AIM is entitled to summary judgment on this claim.

## Conclusion

For the reasons stated above, Defendant's motion for summary judgment (Doc. No. 14) is GRANTED. The pending motions are moot (Doc. Nos. 27, 29). A separate judgment will be entered.

IT IS SO ORDERED this 3rd day of March, 2025.

                                                _____
                                                United States District Judge